UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CORLEEN DAVENPORT,

    Plaintiff,

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration.

    Defendant.

No. 16-CV-10984-DLC

**ORDER ON PLAINTIFF'S MOTION TO REVERSE THE COMMISSIONER'S DECISION (DKT. NO. 37) AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (DKT. NO. 41)**

CABELL, U.S.M.J.

    Corleen Davenport applied for Title II Disability Insurance Benefits ("DIB") but an Administrative Law Judge (ALJ) denied her claim after determining that she did not suffer from a severe impairment, and the Commissioner through the Appeals Council declined to hear her appeal. Davenport argues that the ALJ never received certain records that would have proven a mental health related disability. She moves for reversal of the ALJ's determination as well as a ruling that she is entitled to benefits. (Dkt. No. 37). The Commissioner cross moves to affirm its decision. (Dkt. No. 41). For the reasons discussed below, the

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Carolyn W. Colvin as Acting Commissioner of the Social Security Administration.

court finds no error in the ALJ's treatment of the plaintiff's application. Accordingly, the plaintiff's motion to reverse will be denied and the defendant's motion to affirm will be allowed.

I. **PROCEDURAL HISTORY**

On April 8, 2013, the plaintiff filed an application for disability and disability insurance benefits under Title II of the Social Security Act. (Dkt. No. 26: Social Security Administration Record of Social Security Proceedings, at page 108 (hereinafter "(R.__)")). The plaintiff alleged a physical disability since April 9, 2010 due to a work-related incident that resulted in injury to her lower back and left leg. (R. 97). The plaintiff's date last insured was March 31, 2011. (Id.).

On September 5, 2013, the SSA denied the plaintiff's claim. On January 9, 2014, the SSA denied the application again after the plaintiff requested a reconsideration. (R. 121-23, 125-27).

On October 16, 2014, an ALJ held an administrative hearing. (R. 50). On January 13, 2015, the ALJ determined that the plaintiff was not eligible for disability benefits because she was not disabled since April 9, 2010, the alleged disability onset date. (R. 21-34). On March 22, 2016, the Appeals Council denied the plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner. (R. 1-4). The plaintiff initiated this action on May 25, 2016. (Dkt. No. 1).

## II. FACTS

### A. Personal and Employment History

The plaintiff was born in 1959 and completed the tenth grade. (R. 57, 97). She previously worked as a press operator and as a sales clerk for a movie theatre, coffee shop, and supermarket. (R. 295). She last worked in April of 2010 as a barista for a Starbucks located inside of a Stop & Shop supermarket. (Id.). The plaintiff was 50 years old on April 9, 2010, the alleged onset date of her disability. Her date last insured was March 31, 2011. (R. 97).

### B. Medical History

i. *Treatment for Physical Health Related Issues*

In her 2013 application for benefits, the plaintiff alleged a physical disability due to pain in her lower back and left leg. With respect to records and evidence bearing on treatment for physical matters, the record reflected as follows.

On April 9, 2010, the plaintiff presented to the Morton Hospital emergency department with complaints of lower back pain. (R. 195-96). While at work earlier that afternoon, the plaintiff was lifting heavy trash bags out of a barrel when she heard a "pop" in her lower back immediately followed by pain. (R. 197). She was released from the emergency department that evening, and was prescribed hydrocodone, cyclobenzaprine, and ibuprofen for the pain. (R. 195). The following day, Dr. DeTurck, a chiropractor

with the Taunton Wellness Center, diagnosed the plaintiff with a lumbosacral sprain. (R. 197).

Between April 2010 and May 2012, the plaintiff saw numerous chiropractors and underwent a variety of treatments to alleviate her lower back and left leg pain, including electrical muscle stimulation, targeted physical therapy exercises designed to increase core strength, and chiropractic adjustments. (R. 197-202, 244-47, 541-65).

On February 16, 2012, the plaintiff saw Dr. Alfred Krebs, an orthopedic surgeon, for the first time. (R. 418). Based on his physical examination of her, Dr. Krebs concluded that the plaintiff had "S1 nerve root impingement secondary to her ruptured L5 S1 intervertebral disc," most likely caused by the April 2010 workplace incident. (R. 419). Dr. Krebs recommended an MRI and treatment with anti-inflammatories and muscle relaxers. (Id.). The MRI scan revealed no disc herniation, central canal stenosis or nerve root impingement. (R. 423).

ii. *Treatment for Mental Health Related Issues*

Following the SSA's denial of her application for a physical disability, the plaintiff sought an administrative hearing in front of an ALJ. The ALJ on July 2, 2014 convened a pre-hearing conference to discuss issues that would be pertinent at the as yet unscheduled administrative hearing. (R. 42). The plaintiff and her attorney were both present. (Id.). Among other things, the

4

ALJ noted that there was a suggestion in the record of the plaintiff potentially having some psychiatric issues, but cautioned them that there was as of yet no supporting evidence. The plaintiff's counsel acknowledged that the ALJ was correct but said that they were in the process of gathering records, including records from the South Shore Mental Health Center. Counsel stated that the plaintiff had "a history of some treatment issues for emotional problems" but that they did not have any records of any inpatient admissions. Counsel said he would gather whatever records he could and submit them for the administrative hearing. (R. 45-46).

In fact, counsel did subsequently submit mental health related records for the ALJ's consideration shortly prior to the hearing. In sum, the records reflected that the plaintiff received some intermittent treatment in 2007 and some additional treatment in 2012-2013.

On March 22, 2007, the plaintiff sought psychiatric treatment with a licensed social worker at the South Shore Mental Health Center. (R. 430-34). The plaintiff reported that she was feeling depressed and sad, and she was diagnosed (by the social worker) with major depressive disorder. (R. 434). On April 16, 2007, the plaintiff returned for a follow-up visit and was additionally diagnosed (by a nurse) with post-traumatic stress disorder and

5

mood disorder. The plaintiff was re-prescribed a reuptake inhibitor called Celexa to treat her depression. (R. 442-43).

The plaintiff did not receive any further mental health treatment until sometime in 2012, when she resumed individual therapy sessions at the South Shore Mental Health Center for anxiety and depression due to a host of "legal issues" in connection with a piece of property in Arizona. (R. 435). The evaluating clinician noted that the plaintiff was seeking mental health treatment in part to establish a record of mental suffering and emotional distress that she could in turn present to the judge presiding over a pending court lawsuit in Arizona. (R. 440). After attending three out of five sessions and failing to attend the last two, the plaintiff was discharged from the South Shore Mental Health Center on April 30, 2013. (R. 427-28).

### C. The Administrative Hearing

The ALJ convened the administrative hearing on October 16, 2014. (R. 50-96). The plaintiff testified. Among other things, she testified that she lived at home with her husband, had one son who lives in Arizona, completed the 10th grade, and had no vocational training. (R. 57-58, 65). The plaintiff also recounted her medical history and indicated that her most significant medical concern was the pain in her lower back and left leg as a result of a work-related injury. (R. 58). The plaintiff testified that she had not seen a physician or a chiropractor in connection with her

6

pain since 2012. Instead, she explained, she treated her pain at home with exercises, heating pads, and Tylenol. (R. 59-60).

The plaintiff also testified that she had suffered from depression and anxiety for most of her life. (R. 61). She stated that she would feel depressed and anxious and lacked energy during the day, which in turn inhibited her ability to maintain full-time employment. (R. 73). She stated that she had recently resumed taking medication for anxiety after having stopped in 2007. (R. 63).

A medical expert testified at the hearing regarding her independent assessment of the medical evidence in the record from the alleged onset date through the date last insured, that is, from April 9, 2010 to March 31, 2011. (R. 85-91). The medical expert opined that the evidence supported the plaintiff's subjective complaints of lower back pain, but that the objective evidence, such as MRI scans, did not show any significant physiological abnormalities. (R. 88). As for the plaintiff's mental health issues, the medical expert could not form an opinion as to what effect, if any, those might have on her ability to work. The expert explained that the treatment the plaintiff received in 2007 was simply too far removed from the alleged disability onset date to be instructive, and the treatment the plaintiff received in 2012 did not reveal that the plaintiff had any psychological limitations. Moreover, as the expert noted, the plaintiff sought

the latter treatment primarily in order to establish a record of mental suffering in support of an unrelated legal action. (R. 85-86).

**D. The ALJ's Findings**

On January 13, 2015, the ALJ found that the plaintiff was not disabled. (R. 21-34). The ALJ noted that a plaintiff in order to be eligible for DIB must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applied the well-established five-step evaluation process to determine that the plaintiff did not meet this standard.

Step one considers whether the plaintiff is engaged in substantial gainful activity ("SGA"), because a claimant who is so engaged is not disabled. 20 CFR § 404.1520(b). SGA is defined as work activity done for pay that involves performing significant physical or mental activity. 20 CFR §§ 404.1572(a), (b). The ALJ found that the plaintiff had not engaged in SGA since the alleged onset date of her disability, April 9, 2010. (R. 23).

Step two considers whether the plaintiff has a medically determinable impairment that is severe, or a combination of impairments that is severe as defined by the pertinent regulations. 20 CFR § 404.1520(c). A plaintiff who does not have an impairment

that is severe is not disabled.  Here, the ALJ found that the plaintiff suffered from left lumbar myalgia, a medically determinable impairment, but found that the impairment did not meet or medically equal the severity criteria of an impairment listed in the pertinent regulations because the plaintiff had the ability to perform "[b]asic work activities", including: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations, and (6)[d]ealing with changes in a routine work setting."  (R. 23, 25).

In reaching this conclusion, the ALJ noted that the objective medical evidence did not support the plaintiff's testimony regarding her functional limitations.  (R. 30-31).  The ALJ also found that the medical record failed to establish a medically determinable impairment by an acceptable medical source as defined in 20 CFR § 404.1513.  (Id.).  Rather, the only diagnosis made by an acceptable medical source was one of left lumbar myalgia, which, as the ALJ noted, is essentially a diagnosis of pain without an underlying physical impairment.  (Id.).

9

In terms of the plaintiff's alleged anxiety and affective disorders, the ALJ noted that the medical evidence revealed that the plaintiff sought psychiatric treatment only twice in the relevant time period, that is between the alleged onset of the disability and her date last insured. (R. 24-25). The ALJ afforded little to no weight to the psychiatric records because the diagnoses contained in those records were made by a social worker and nurse and therefore were not offered by an acceptable medical source as defined in 20 CFR § 404.1513. (R. 24).

The ALJ accordingly concluded that the plaintiff was not disabled. (R. 33).

### III. STANDARD OF REVIEW

A court reviews the findings of an ALJ only to determine whether the findings are supported by substantial evidence, and whether the correct legal standard was applied. *Teague v. Colvin*, 151 F. Supp. 3d 223, 226 (D. Mass. 2015). Substantial evidence to support a decision exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Id. (quoting Rodriguez v. Sec'y of Health and Human Services,* 647 F.2d 218, 222 (1st Cir. 1981)). When applying the substantial evidence standard, the court must bear in mind that it is the province of the Commissioner to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Ortiz v. Secretary of Health and*

*Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). This court may affirm, modify, or reverse the ALJ's decision, but reversal is only warranted if the ALJ made a legal or factual error in evaluating the plaintiff's claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. *Roman-Roman v. Commissioner of Soc. Sec.*, 114 Fed. Appx. 410, 411 (1st Cir. 2004). Thus, if the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record could arguably support a different conclusion. *Evangelista v. Secretary of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).

## IV. DISCUSSION

The plaintiff does not argue that the ALJ erred when he determined that she did not suffer from a severe impairment based on the record before him. Rather, she contends that the ALJ did not have a complete record before him, because he for some reason did not receive some additional mental health related evidence dating back to 2004. Because the record is clear that the ALJ did receive mental health treatment records beginning from 2007, the court presumes that any such records would at most reflect treatment from 2004 to 2007. The plaintiff contends that had this evidence been reviewed, it would have persuaded the ALJ that she suffers from a mental health related disability. This argument sputters from the start and does not get far.

11

As a threshold matter, the plaintiff does not proffer what these records would reveal, how they would have altered the outcome of the administrative hearing, or why they were never presented to the ALJ for his consideration. Her failure to offer more is particularly harmful to her claim where the evidence would by default be of marginal relevance at best where it was several years old and the ALJ already had evidence before him of mental health related treatment during the relevant time period.

To be sure, the plaintiff offers two possible reasons as to why the evidence was not received. She suggests in one paragraph that she (or her counsel) had the records but the ALJ did not allow her to submit them. (Dkt. No. 1; "Had the ALJ . . . allowed the submission of the complete medical of all claims submitted from 2004 until present they would have [had] no choice but to approve the entitlement and grant me my benefits."). In the very next paragraph, however, she seems to suggest that someone other than her or her counsel, that is, an unidentified "they", had the evidence but failed to submit it to the ALJ. (Id.; "Upon review of the [evidence] submitted to the ALJ I realized *they* failed to submit numerous reports and paperwork relating to my mental state dating back to 2004.")(emphasis added). Treating these assertions as alternative arguments, neither is persuasive and neither calls the propriety of the ALJ's consideration of the record or his determination into question.

First, to the extent the plaintiff argues that the ALJ did not allow her to submit evidence dating back to 2004, there is, simply, no evidence to suggest the ALJ acted in any way to restrict what information the plaintiff could submit in support of her application, and the court rejects the assertion as groundless. Indeed, the record demonstrates unambiguously that the ALJ himself admonished the plaintiff at the pre-hearing conference to be prepared to marshal evidence to support a claim of a mental health related impairment. If anything, the ALJ encouraged the submission of any additional evidence bearing on the plaintiff's mental health.

Second, to the extent the plaintiff argues that someone must have failed to transmit the additional evidence to the ALJ, it suffices to point out that it was the plaintiff's burden to prove the existence of a severe impairment and she and no one else was responsible for ensuring that the relevant psychiatric medical evidence was submitted to the ALJ for his consideration. *See Musto v. Halter*, 135 F. Supp. 2d 220, 233 (D. Mass. 2001)("It is not unreasonable to require the claimant, who is in a better position to provide information about [her] own medical condition, to do so.")(quoting *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)); *see also Jones v. Berryhill*, No. 16-11011-DJC, 2017 WL 3726018, at * 9 (D. Mass. Aug. 29, 2017)("the claimant has a duty to exercise reasonable diligence in providing the Secretary with relevant

evidence to satisfy his burden of production at the first four steps of the process")(c*iting Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001)).  In that regard, there is no dispute that the plaintiff (through counsel) submitted some psychiatric records prior to the scheduled hearing.  (R. 21).  If the plaintiff is now heard to complain that those records were not complete, the fault does not lie with the ALJ.

To be clear, the court finds that the ALJ met his burden to consider the evidence in the record.  The Commissioner is required by law to "develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability."  42 U.S.C. § 423(d)(5)(B); *see also Carrillo Marin v. Secretary of Health and Human Services*, 758 F.2d 14, 17 (1st Cir. 1985)(same).  The Commissioner demonstrably met her burden here where the records before the ALJ dated from early 2007 to 2012 and therefore included the relevant time period (2010-2011).  The court also finds in that regard that the ALJ did not err when he determined on this record that the evidence did not show that the plaintiff suffered from a severe impairment.  *See e.g.*, *Teague*, 151 F. Supp. 3d at 226.

In closing, a final point bears noting.  The plaintiff in her opposition to the Commissioner's motion and in support of her own motion appends as exhibits various medical records separate and

apart from those included in the SSA record. (Dkt. No. 38, Ex. 1-4). Among other things, these records include a 2006 consultative psychological exam report of the plaintiff (but curiously do not include any mental health records dating back to 2004). (Id., Ex. 2). It goes without saying, although we do say it here for the plaintiff's edification, that the court may not now consider evidence that was not properly before the ALJ or part of the SSA record. *See Saenz v. Colvin*, 61 F. Supp. 3d 195, 205 (D. Mass. 2014)("It is well-established that when reviewing the ALJ's decision, the Court should not consider additional evidence that was never presented to the ALJ.")(*citing Mills v. Apfel*, 244 F.3d 1, 4 (1st Cir. 2001)).

V. **CONCLUSION**

For the foregoing reasons, the plaintiff's motion to reverse the ALJ's determination and declare her eligibility for disability benefits (Dkt. No. 37) is DENIED and the Commissioner's Motion for an Order Affirming Her Decision (Dkt. No. 41) is GRANTED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: March 7, 2018